# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| William R. Jewett, Jr., | ) | |
| | ) | |
| Petitioner/Defendant, | ) | Civil Actions 11-00525-KD |
| | ) | and 11-00526-KD |
| | ) | |
| v. | ) | Criminal Nos. 09-00076-KD-N |
| | ) | and 10-00019-KD-N |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

On September 8, 2011, Petitioner William R. Jewett, Jr., a federal prison inmate initially proceeding *pro se*, filed a timely motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Jewett actually filed identical § 2255 petitions in both his criminal actions.[1] (*Compare* Criminal No. 09-76, Doc. 76, *with* Criminal No. 10-19, Doc. 22.) On November 9, 2011, the United States filed identical responses in opposition in both actions. (*Compare* Criminal No. 09-76, Doc. 82, *with* Criminal No. 10-19, Doc. 28.) And on December 16, 2011, Jewett filed identical replies in support of his motions in both. (*Compare* Criminal No. 09-76, Doc. 83, *with* Criminal No. 10-19, Doc. 29.)[2]

---

[1] As recounted in the factual resume to Jewett's plea agreement in Criminal No. 10-19 (Doc. 9), that case resulted from Jewett's willful failure, while on pretrial release, to appear for arraignment on the second superseding indictment and for jury selection, in Criminal No. 09-76, on August 28, 2009. He was subsequently arrested, on January 15, 2010, in a marina in Belize City, Belize.

[2] In some instances, identical pleadings have been docketed in both criminal cases, therefore, for the sake of economy, where duplicative pleadings exist, the

In the course of reviewing the pleadings, it was determined that an evidentiary hearing was necessary, and that hearing was conducted by the undersigned United States Magistrate Judge on August 20, 2013.[3] Jewett was represented by appointed counsel, Dennis Knizley, a member of the Court's CJA Panel,[4] and AUSA Steven Butler appeared for the United States. Testimony was obtained from Jewett, his brother, the petitioner's wife, and his trial counsel, Mr. Stankoski.

This action is now before the undersigned for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Proceedings. For the reasons explained herein, it is **RECOMMENDED** that Grounds 2 and 3 of Jewett's identical § 2255 petitions be **DENIED** and that the Court find that he is not entitled to a certificate of appealability and is therefore not entitled to appeal *in forma pauperis* as to those grounds. It is, however, **RECOMMENDED** that Ground 1 of Jewett's identical § 2255 petitions be **GRANTED**.

## I.    <u>Underlying Criminal Case</u>

Jewett was the sole defendant in a single-count indictment (Doc. 1), returned

---

undersigned will reference the pleadings filed in Criminal No. 09-76.

[3]    This Court is required to "hold an evidentiary hearing on a habeas petition '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Scott v. United States*, 325 Fed. App'x 822, 824 (11th Cir. Apr. 29, 2009) (per cuiam) (quoting 28 U.S.C. § 2255(b)).

[4]    Rule 8(c) of the Rules Governing Section 2255 Proceedings requires appointment of counsel for a petitioner "who qualifies to have counsel appointed under 18 U.S.C. § 3006A . . . [i]f an evidentiary hearing is warranted."

in May 2009, alleging that he was a felon in possession of twenty-three firearms, in violation of 18 U.S.C. § 922(g)(1). In April 2009, Jewett appeared on a summons (Docs. 2, 3), was arraigned (Docs. 4, 5), and released pretrial on conditions (Doc. 6). At this time, Jewett had retained William Kimbrough, Esq. to represent him. Jewett's initial pretrial conference occurred on May 12, 2009 (*see* Doc. 9), and he was set for trial in June 2009. But that setting was continued on multiple occasions (*see* Docs. 10, 11, 13, 14, 16-24, 28, 31), during which time, Attorney Michael Wing appeared on Jewett's behalf (*see* Doc. 15) and launched unsuccessful efforts to dismiss the indictment and suppress evidence (*see* Docs. 25, 27, 29, 30, 32-35, 56, 59).

On August 27, 2009, the United States filed a superseding indictment (Doc. 36), alleging three counts of felon in possession, in violation of § 922(g)(1). Jewett was to be arraigned on the superseding indictment on August 31, 2009 (*see* Doc. 38). His failure to appear at that arraignment and for jury selection, set for the same day, resulted in the issuance of a bench warrant (Doc. 40) and—ultimately—the filing of his second criminal action, Criminal No. 10-19 (for a single count of knowing and willful failure to appear as required, in violation of 18 U.S.C. § 3146(a)(1)).

On January 15, 2010, Jewett was arrested in Belize. And, after his return to the United States and this District, he was arraigned on the superseding indictment in Criminal No. 09-76 (Doc. 38) and the indictment in 10-19 (Doc. 1) (*see* Criminal No. 09-76, Docs. 47, 48; Criminal No. 10-19, Docs. 3, 4) on March 3, 2010 and

detained pretrial.

J. Clark Stankoski, Esq. appeared on behalf of Mr. Jewett on March 11, 2010. (*See* Criminal No. 09-76, Doc. 51; Criminal No. 10-19, Doc. 6). On April 14, Jewett pleaded guilty, pursuant to an agreement (Criminal No. 09-76, Doc. 58), to Count 2 of the superseding indictment in Criminal No. 09-76 (*see* Criminal No. 09-76, Doc. 60), and guilty, pursuant to an agreement (Criminal No. 10-19, Doc. 9), to Count 1 of the indictment in Criminal No. 10-19 (*see* Criminal No. 10-19, Doc. 10). (*See also* Doc. 80, guilty plea tr.) As will be discussed in more detail below, after Probation prepared an initial presentence report (Doc. 61, to which Jewett filed objections (*see* Docs. 66, 72; *see also* Docs. 68, 69), a final presentence investigation report (Doc. 70) was filed on July 27, 2010, and Jewett was sentenced on September 17, 2010, to 76 months imprisonment (38 months as to each count, to be served consecutively) (*see* Doc. 73, 74; *see also* Doc. 81, sentencing tr.). There was no direct appeal.

## II.    Ineffective Assistance of Counsel Claims and the *Strickland* Standard

Jewett has asserted three grounds for habeas relief. In all three, he alleges that his retained trial counsel, Mr. Stankoski, was constitutionally ineffective with regard to Jewett's sentencing. The substance of each ground, as state in the identical petitions, is set out, in its entirety, below:

> Counsel's representation was deficient knowing that Jewett[']s release date from incarceration on his Collin County[, Texas] Conviction was important. Jewett told Counsel that he was released from prison only a few months after the July 1991 sentencing; that counsel should have known that he needed the Texas records to support argument (as shown by objection to the PSR); and that Texas records were readily available. The issue is the difference between the guideline sentencing range found by the Court using the Criminal History Category III (78-

4

97 months) and Criminal History Category II (70-87 months). Jewett's Criminal History score should have been a II not a III.

(Ground 1, Doc. 76 at 4.)

Counsel['s] representation was deficient by failing to object to the PSR regarding offense level 26 (as requested by Jewett). Enhancements were given on other dropped counts as relevant conduct that were not in the same course of conduct. Which would have made Jewett's offense level a 14. Counsel intentionally failed to meet or consult with Jewett between the time frame to make objections to the PSR and Sentencing. With a Criminal History Category of II, the guideline sentencing range would be between 18-24 months at an offense level 14, not 70-87 months at a[n] offense level 26.

(Ground 2, *id.*)

Counsel's representation was deficient by failing to object to the PSR regarding no listing of guideline range for Failure to Appear 18 U.S.C. § 3146(a)(1). Jewett was sentenced to 38 months on the Failure to appear which was above the applicable range of 12-18 months at a Criminal History Category of II with a[n] offense level of 12. With no statement as to an upward departure from the guidelines from the Court.

(Ground 3, *id.* at 4-5.)

To establish his claims of ineffective assistance of counsel, Jewett is required to show **both** that his attorney's representation fell below "an objective standard of reasonableness"—the "performance prong"—**and** that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different—the "prejudice prong." *See generally Strickland v. Washington*, 466 U.S. 668 (1984). He "bears the burden of proof" as to both prongs "and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926 (2002); *accord Cooper v. Secretary, Dep't of Corr.*, 646 F.3d 1328, 1351 (11th Cir. 2011).

To succeed on the performance prong, Jewett "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted); *accord Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005). That "presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005). As the Supreme Court has explained,

> "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Id.* at 690.

*Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 788 (2011) (some internal citations modified or omitted); *see also Pair v. Cummins*, 373 Fed. App'x 979, 981-82 (11th Cir. Apr. 20, 2010) (per curiam) ("The performance prong['s] . . . standard is that of

a reasonable attorney, not a 'paragon of the bar' or an 'Aristotle' or a 'Clarence Darrow.'" (quoting *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007); *Yarborough v. Gentry*, 540 U.S. 1, 11 (2003))); *Gonzalez v. United States*, Nos. 09–22386–Cv–JORDAN; 07–20759–Cr–JORDAN, 2010 WL 2367356, at *5 (S.D. Fla. Apr. 21, 2010) ("The court's role in reviewing ineffective assistance of counsel claims is not to 'grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within 'wide range of professionally competent assistance.'" (quoting *Van Poyck v. Florida Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002))), *report and recommendation adopted*, 2010 WL 2366531 (S.D. Fla. June 14, 2010).

"The test for [deficiency, moreover,] is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc). Rather, the inquiry under *Strickland* is limited to "whether some reasonable lawyer could have acted, in the circumstances, as defense counsel acted . . . ." *Conklin v. Schoefield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (quoting *Waters*, 46 F.3d at 1518); *see also Moreno v. United States*, Criminal No. 1:06–CR–461–CC–GGB; Civil Action No. 1:10–CV–0164–CC–GGB, 2012 WL 7829200, at *4 (N.D. Ga. Mar. 13, 2012) ("The test [for deficiency] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." (quoting *White v. Singletary*, 972 F.2d

1218, 1220 (11th Cir. 1992))), *report and recommendation adopted*, 2013 WL 1339718 (N.D. Ga. Apr. 1, 2013); *id.* ("[P]etitioner must demonstrate that 'no competent counsel would have taken the action that his counsel did take.'" (quoting *United States v. Freixas*, 332 F.3d 1314, 1319-20 (11th Cir. 2003))).

And, in order to avoid "the distorting effects of hindsight,"[5] a habeas court must "evaluate the reasonableness from counsel's perspective at the time of the alleged error in light of all circumstances of the case." *Griffin v. United States*, 204 Fed App'x 792, 794-95 (11th Cir. Oct. 25, 2006) (per curiam) (citing *Strickland*, 466 U.S. at 690). Likewise, "[t]actical decisions regarding trial strategy are left to the sound judgment of counsel and are entitled to a 'strong presumption' of competence." *Kearney v. United States*, Nos. 2:04–CR–15–1–BO; 2:09–CV–55–BO, 2010 WL 2402887, at *2 (E.D.N.C. June 14, 2010) (quoting *Strickland*, 466 U.S. at 689, and citing *Bell v. Cone*, 535 U.S. 685, 698 (2002)). For a petition challenging chosen trial strategies to be successful, therefore, it must not be "devoid of the factual basis that is required to show that counsel's tactics were manifestly unreasonable." *Id.*

In addition, Jewett "must affirmatively prove prejudice" to succeed on an ineffective assistance of counsel claim. *Butcher v. United States*, 368 F.3d 1290, 1294 (11th Cir. 2004). "[T]hat the errors had some conceivable effect on the

---

[5]     "*Strickland* anticipated the temptation 'to second-guess counsel's assistance after conviction or adverse sentence' and cautioned that '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Rompilla v. Beard*, 545 U.S. 374, 408 (2005) (Kennedy, J., dissenting) (quoting 466 U.S. at 689)).

outcome of the proceeding" is insufficient to show prejudice. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693); *see also Evans v. Secretary, Fla. Dep't of Corr.*, 699 F.3d 1249, 1270 (11th Cir. 2012) (under *Strickland*, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors," and that "[t]he likelihood of a different result must be substantial, not just conceivable" (citations omitted)).

Finally, when applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008 (1999); *see also Butcher*, 368 F.3d at 1293 ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

## III.  Grounds 2 and 3

At the outset, the undersigned will address Jewett's second and third reasons for believing Mr. Stankoski's representation was constitutionally ineffective.  In those grounds of the petitions, Jewett contends that his trial counsel's representation was constitutionally deficient because counsel failed to include two additional objections in Jewett's July 16, 2010 response (Doc. 68) to the draft PSR (Doc. 66), filed June 25, 2010.  Both objections Jewett now believes his counsel should have made then concern how his total offense level was determined.  But, because there was no error in how the total offense level of 26 was reached, as set out in either the draft PSR (Doc. 61 at 12-13), or as reasserted in the final PSR (Doc.

70 at 12-13), Mr. Stankoski was not deficient for failing to lodge these objections. *See, e.g., Richards v. United States*, No. 8:07-CV-172-T-30TGW; Crim. No. 8:05-cr-52-T-30TGW, 2007 WL 1527000, at *2 (M.D. Fla. May 24, 2007) ("Because Petitioner's erroneous firearm enhancement claim is without merit, there was no valid objection for counsel to make [at sentencing]. Failure to raise a meritless argument does not constitute ineffective assistance. Petitioner, therefore, failed to meet both the prejudice prong and the deficiency prong of the *Strickland* analysis." (citing *Diaz v. Secretary for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005)).

## A. Ground 2

Jewett *first* argues that "[e]nhancements [should not have been] given on other dropped counts as relevant conduct that were [sic] not in the same course of conduct" (Doc. 76 at 4 (ground two); *compare id.*, *with* Doc. 61, ¶ 39 ("Because the offense involved 24 firearms, pursuant to U.S.S.G. § 2K2.1(b)(1)(B), the offense level is increased by four levels.")).

U.S.S.G. § 2K2.1(b)(1) provides that offenses involving three or more firearms may be increased depending on the number of firearms, and subsection (B) of that section provides for a four-level increase for offenses involving 8-24 firearms. Application Note 5 to § 2K2.1 provides, further, that, "[f]or purposes of calculating the number of firearms under [§ 2K2.1(b)(1), a court should] count only those firearms that were unlawfully sought to be obtained, *unlawfully possessed*, or unlawfully distributed . . . ." *Id.* (emphasis added). Here, it is uncontested that law enforcement officers retrieved 24 firearms from the home of a defendant, Jewett,

who ultimately pleaded guilty to being a felon in possession. (Docs. 61, 70, ¶ 22.) And, for purposes of determining an offense-level enhancement, it was entirely proper for Probation (and the Court) to consider conduct related to the dismissed counts of the superseding indictment (Count 1 (unlawful possession of one firearm) and Count 3 (unlawful possession of 22 firearms)). *Cf., e.g., United States v. McGee*, 7 F.3d 1496, 1499 (10th Cir. 1993) ("The fact the plea bargain agreement called for the dismissal of the more serious counts, basically charging a conspiracy to distribute much more crack, does not render the relevant conduct guideline inoperative. The use of dismissed counts to determine the offense level is proper. We are not alone in so holding." (collecting authority, including *United States v. Scroggins*, 880 F.2d 1204, 1214 (11th Cir. 1989)).[6] Thus, because the enhancement Jewett challenges was proper, his counsel was not constitutionally ineffective for failing to challenge it, and Jewett's second ground for ineffective assistance of counsel fails. *Richards*, 2007 WL 1527000, at *2.

## B. Ground 3

---

[6]     *See also United States v. Crudgington*, 469 Fed. App'x 823, 824-25 (11th Cir. Apr. 11, 2012) (per curiam) (where a defendant pleaded guilty to knowingly engaging in business as a dealer in firearms without a license, in violation of § 921(a)(1)(A), the Eleventh Circuit rejected his challenge to the district court's use of Application Note 5 to count the 100-plus firearms seized from his residence: "Here, Crudgington makes no claim that the 100-plus firearms were separate from the illegal firearms business he was operating. Indeed, nearly all of the firearms in question were directly linked to this illegal business, as evidenced by the fact that they had price tags and some had already been advertised for sale in local papers. Thus, unlike [a] federally-licensed firearms dealer . . . , Crudgington cannot plausibly assert that the firearms yet to be sold illegally were being used in a purely lawful manner. Rather, as the essential component of his illicit firearms business, it is clear that the firearms in question were being used by Crudgington unlawfully under 18 U.S.C. § 922(a)(1)(A). For this reason, we hold that the district court acted consistently with the commentary to § 2K2.1(b)(1) when it counted the firearms seized from Crudgington's residence in calculating his sentence.").

Jewett **next** argues that it was somehow improper to group together Count Two of Criminal No. 09-76 (felon in possession) and Count One of Criminal No. 10-19 (failure to appear) and consider the failure-to-appear count as a two-level enhancement (for obstruction of justice) to the felon-in-possession count. (*Compare* Doc. 76 at 4-5 (ground three, in which Jewett in part asserts that counsel should have objected because "the PSR [did not provide a] guideline range for Failure to Appear 18 U.S.C. § 3146(a)(1)"), *with* Doc. 61, ¶¶ 37, 41 ("Count two in 09-00076 and count one in 10-00019 are grouped together, pursuant to U.S.S.G. § 3D1.2(c), as the conduct in 10-00019 is embodied in a Chapter Three adjustment to 09-00076."; "The defendant failed to appear for arraignment and jury selection in case number 09-00076, and was charged with failure to appear in case number 10-00019. Thus, count one in case number 10-00019 accounts for obstruction of justice, and the defendant is given a two-level increase in the offense level, pursuant to U.S.S.G. § 3C1.1 Commentary Application Note 4(e).").)

There is also absolutely no merit to this ground for relief. U.S.S.G. § 3D1.2 instructs that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." *Id.* "Counts involve substantially the same harm within the meaning of this rule [w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c). The Eleventh Circuit, moreover, has consistently affirmed the grouping Jewett now contends his counsel should have objected to. *See United States v. Torres*, No. 05-12646; 05-12651, 2006

WL 2520684, at *3 (11th Cir. Sept. 1, 2006) (per curiam) ("If a defendant is convicted of both a failure to appear and the underlying offense, the Sentencing Guidelines direct the district court to determine the applicable guideline range by (1) grouping the offenses together under U.S.S.G. § 3D1.2(c), and (2) treating the failure to appear as an obstruction of justice and applying the obstruction-of-justice enhancement found at U.S.S.G. § 3C1.1. *See* U.S.S.G. § 2J1.6, comment. (n.3)."); *United States v. Oliveros*, 376 Fed. App'x 896, 898 n.2 (11th Cir. Apr. 27, 2010) (per curiam) ("For purposes of calculating the offense level, the PSI grouped the failure to appear offense together with the drug offenses, pursuant to U.S.S.G. § 3D1.2(c), because the failure to appear offense was treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to the drug offenses."); *United States v. Crews*, 496 Fed. App'x 896, 898, 900 (11th Cir. Nov. 8, 2012) (per curiam) ("The presentence investigation report grouped Crews's offenses for being a felon in possession of a firearm, failing to appear, and criminal contempt because they involved substantially the same harm. The report provided a base offense level of 20 for being a felon in possession, which the report increased . . . by two levels for obstruction of justice . . . . The district court correctly calculated Crews's guideline range. The district court did not clearly err in imposing a two-level increase for obstruction of justice because Crews willfully failed to appear, as ordered, for a judicial proceeding." (citations and internal quotation marks omitted)).[7] Thus,

---

[7]     The Eleventh Circuit provided a fuller explanation for grouping convictions for failure to appear and the underlying offense, and treating the failure to appear as an upward adjustment for obstruction of justice, in *United States v. Alcantara*, 257 Fed. App'x 174 (11th Cir. Dec. 3, 2007) (per curiam):

because the grouping Jewett challenges was proper, his counsel was not

> Application note 3 to § 2J1.6 of the sentencing guidelines, which governs failure to appear, states that where there are convictions for failure to appear and an underlying offense, the offenses are to be grouped, pursuant to U.S.S.G. § 3D1.2(c), and the failure to appear should be treated as an upward adjustment for obstruction of justice under § 3C1.1. U.S.S.G. § 2J1.6, cmt. n.3. The commentary notes that "18 U.S.C. § 3146(b)(2) does not require a sentence of imprisonment on a failure to appear count, although if a sentence of imprisonment on the failure to appear count is imposed, the statute requires that the sentence be imposed to run consecutively to any other sentence of imprisonment." *Id.* The commentary further states that "[t]he combined sentence will then be constructed to provide a 'total punishment' that satisfies the requirements both of § 5G1.2 (Sentencing on Multiple Counts of Conviction) and 18 U.S.C. § 3146(b)(2)." *Id.*
>
> Our analysis of the grouping rules in U.S.S.G. § 3C1.2 and application note 3 to U.S.S.G. § 2J1.6 allows us to conclude that Congress intended that failure to appear for trial be treated as an offense characteristic of the underlying offense, with an upward adjustment for obstruction of justice. While the district court may still impose a separate sentence for the failure to appear count, the cumulative term of imprisonment for both offenses should fall within the advisory Guidelines range that was calculated after applying the obstruction of justice adjustment. This advisory Guidelines range therefore is the "total punishment" Congress refers to in U.S.S.G. § 2J1.6 cmt., n.3. After *Booker* rendered the sentencing Guidelines advisory, however, the Guidelines range is no longer the mandatory "total punishment" that a district court is allowed to impose.

*Id.* at 177-78; *see also United States v. Barrios*, 136 Fed. App'x 238, 239-40 (11th Cir. June 8, 2005) (per curiam). ("In August 2002, Barrios pleaded guilty to conspiracy to possess with intent to distribute cocaine. A sentencing hearing was set for October, but, although he was twice given notice of the court date, Barrios failed to appear for his sentencing. In a separate indictment, Barrios pleaded guilty for his knowing failure to appear at sentencing. The district court consolidated the cases for sentencing and, in accordance with the United States Sentencing Guidelines, grouped the offenses under Guidelines section 3D1.2(c), which directs the district court to group together 'counts involving substantially the same harm.' The district court set Barrios's offense level at 26 for the more serious offense of drug-trafficking, in accord with Guidelines section 3D1.3 and section 2D1.1(c)(7). To reach the final guideline range of 110 to 137 months, the district court increased the offense level by two for obstruction of justice. The district court sentenced Barrios to 130 months, which it allocated between the two offenses: 106 months for the conspiracy charge and 24 months for failure to appear. . . . Barrios cannot demonstrate plain error because the district court did not err. Barrios argues that the method of sentence calculation used by the district court subjected him to double punishment. On the contrary, section 3D1.2(c) is specifically designed to prevent double punishment, and the district court applied the section properly. . . .").

constitutionally ineffective for failing to challenge it, and Jewett's third ground for ineffective assistance of counsel fails. *Richards*, 2007 WL 1527000, at *2.

### C. Certificate of Appealability (Grounds 2 and 3)

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned **RECOMMENDS** that a certificate of appealability as to **Grounds 2 and 3** be **DENIED**. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Jewett is not entitled to a certificate of appealability as to his ineffective-assistance-of-counsel claims stated in Grounds 2 and 3. Where, as is the case for those grounds, a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also id.* at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983), includes a showing that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (quotation modified). With respect to Jewett's ineffective-assistance-of-counsel claims stated in Grounds 2 and 3, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented is adequate to deserve encouragement to proceed further. Accordingly, Jewett is not entitled to a certificate of appealability as to these claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011)[8]; *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

## IV. Ground 1

The undersigned now turns to the ground for relief that required the Court to

---

[8]     It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability, on October 11, 2011. (*See* Doc. 14 in CA-11-0165-WS-C.)

hold an evidentiary hearing on Jewett's petitions. To determine whether Mr. Stankowski was constitutionally deficient for failing to secure sufficient documentation to establish when Jewett's incarceration in Texas ended—the narrow scope Jewett assigns his first ground for relief[9]—it is important to walk through the timeline of events following the filing of the draft PSR (Doc. 61).

## A. Objection to Inclusion of 1991 Texas Conviction as an Enhancement and Consideration of that Objection at Sentencing

In the draft PSR, Jewett received three criminal history points, pursuant to U.S.S.G. § 4A1.1(a),[10] for a 1991 conviction (for unauthorized use of a motor vehicle, escape, and credit card abuse) in Collin County, Texas, in which he was sentenced to five years. (*See* Doc. 61, ¶ 50.) In his objections to the draft PSR (Doc. 66), Jewett challenged the inclusion of this sentence on two grounds. First, he argued,

> It would appear that the calculations were made assuming that Mr. Jewett was incarcerated from July 22, 1991 for a period of five (5) years. However, Mr. Jewett was given credit for the One-Hundred Thirty-Eight (138) days during which he was incarcerated prior to the

---

[9]    *See* Doc. 76 at 4 ("Counsel's representation was deficient knowing that Jewett[']s release date from incarceration on his Collin County[, Texas] Conviction was important. Jewett told Counsel that he was released from prison only a few months after the July 1991 sentencing; that counsel should have known that he needed the Texas records to support argument (as shown by objection to the PSR); and that Texas records were readily available. . . .").

[10]    This provision of the then-applicable 2009 version of the Federal Sentencing Guidelines Manual provides that, when determining total criminal history points, three points should be added "for each prior sentence of imprisonment exceeding one year and one month." *Id.* A "sentence of imprisonment" is defined as "a sentence of incarceration and refers to the maximum sentence imposed." *Id.*, § 4A1.2(b). While Jewett's sentence in Texas, regardless of how long he was actually "incarcerated," exceeds one year and one month, "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is *not counted unless* the defendant's *incarceration* extended into this fifteen-year period." *Id.*, § 4A1.1(a) cmt. 1 (emphasis added).

guilty plea, and no further incarceration was given. [His federal felon-in-possession] offense happened on July 22, 2008, therefore exactly Seventeen (17) years separated the guilty plea and incarceration and the instant offense. Therefore, Mr. Jewett should be given no points for these convictions. Although the sentence is the stated maximum, here since he was sentenced to Five (5) years, credit for time served, the actual pronounced sentence was One-Hundred Thirty-Eight (138) days.

(*Id.* at 5.) Jewett's second argument was that, because he was seventeen, and therefore a minor at time of the Texas conviction, "it is improper to count this conviction as an adult conviction." (*Id.*)[11]

---

[11] As to this argument, without citing evidence in support, Probation responded, "pursuant to U.S.S.G. § 4A1.2(d)(1), although the defendant was under 18, he was convicted as an adult and received a sentence exceeding one year and one month." (Doc. 68 at 3.) At sentencing, counsel for Jewett reasserted the argument, but he was quickly overruled by the Court:

> THE COURT: Maybe you can help me by pointing me to the guideline provision that you are contesting. What you are saying is because he was under 17, only 10 years back should count is that your argument?

> MR. STANKOSKI: Yes, ma'am.

> THE COURT: And *the fact that he was convicted as an adult* does not change the application of 10 years?

> MR. STANKOSKI: Well, I am arguing that it should.

> THE COURT: Not that it does, under the guidelines?

> MR. STANKOSKI: I couldn't find a specific case, no, ma'am.

> THE COURT: I overrule that objection. But I want to hear more about the other objection that it doesn't fit into the 15-year.

> MR. STANKOSKI: Yes, ma'am.

(Doc. 81 at 4:11-5:4 (emphasis added).) Because Jewett was convicted as an adult in Texas, the Court was, of course, correct that, regardless that he was seventeen, it is the sentence itself that counts. *Compare* U.S.S.G. § 4A1.1(a) cmt. 1 (2009) (which provided in pertinent part, "A sentence imposed for an offense committed prior to the defendant's eighteenth birthday is counted under this term *only if it resulted from an adult conviction*." (emphasis added)), *with id.*, § 4A1.2(d)(1) ("If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under

As to his first argument, Probation did not focus on the length of Jewett's incarceration as the means to reach back to capture the Texas sentence, but, instead, focused on the conduct purportedly relevant to the instant, felon-in-possession, offense, and responded,

> Based on the statement of Chris Saddler, he had observed the defendant with firearms around Christmas 2004 (¶ 15). Based on relevant conduct, the five year period of incarceration imposed on July 22, 1991, conviction would extend into the 15 year period, **even if the defendant had been released from custody on July 22, 1991**, which does not comport with the judgment in the case. . . .

(Doc. 68 at 2 (emphasis added); *see also* Doc. 61, ¶ 15 ("Saddler reported that he had known Jewett since 2003, and the first time he saw Jewett with a firearm was around Christmas 2004. Saddler also admitted that he gave Jewett a .45-caliber pistol as a Christmas gift. He also admitted to giving or selling Jewett at least two additional firearms: a Bushmaster, model M4, .223-caliber rifle, and a PPS, .308-caliber rifle, with a Leopold scope. Saddler stated that Jewett also purchased a Colt, model Commander, .45-caliber pistol. According to Saddler, he has seen Jewett in possession of numerous firearms, and estimated that Jewett possessed between 30 and 40 firearms.").)[12]

---

§ 4A1.1(a) for each such sentence.").

[12] Although late 2004 appears to be the *earliest* a witness can link Jewett to possession of a firearm, multiple paragraphs in the draft PSR—to which no objections were asserted—document reports of Jewett with firearms *in 2005* (¶ 14 (" . . . Kenyon also stated that in 2005, he observed Jewett access a large safe at Accu Crete[, a business he owned,] in Foley, Alabama[, which] contained between eight and ten assault rifles . . . .") *and in 2006* (¶¶ 16, 17 ("According to Price, he was employed by Jewett at Accu Crete until it was sold . . . in 2006. Price stated that while employed by Jewett, he routinely observed Jewett in possession of firearms. . . . Josh Bailey . . . stated that he was employed by Jewett at Accu Crete from February 2006 to August 2006 . . . [and] routinely observed firearms kept in a safe at Jewett's Foley, Alabama Accu Crete company. . . ."). Thus, Probation's position—

Therefore, going into the sentencing hearing, it was clear that Jewett's counsel had objected to the inclusion of the Texas conviction as an enhancement, but that he had failed to make specific factual objections to the purportedly relevant conduct set out in the PSR (Doc. 61, ¶¶ 14-17). From a review of the sentencing hearing transcript, it is, moreover, also clear that, one, Mr. Stankoski's objection to the inclusion of the Texas conviction did not take relevant conduct into consideration, and two, the Government was relying on Probation's relevant conduct theory **and** the fact that Jewett did not challenge the facts underlying the purportedly relevant conduct set out in the PSR:

> THE COURT: . . . I want to hear more about the other objection that it doesn't fit into the 15-year.
>
> MR. STANKOSKI: Yes, ma'am.
>
> THE COURT: I need help figuring out the end of sentence I guess. What is your date that you say the sentence ended?
>
> MR. STANKOSKI: My objection, as I have written here, is that he was incarcerated for, let me make sure, 138 days. And that this offense occurred on July 22nd of '08. I'm saying that 17 years, if you go backward, that is 17 years to when the 138 days ran.
>
> THE COURT: Okay.
>
> MR. STANKOSKI: I think probation's position is you don't count the 138 days, you have to count the entire 5 years as a custody. Then if you go from '91 forward 5 years, then you get within the 15 years if you look at it that way[.[13]] I hope I have not confused you. Because

which is: even if Jewett's period of incarceration ended the day the sentence was imposed, July 22, 1991, relevant conduct extends back to capture that sentence—applies with equal force to conduct described in paragraphs 14, 16, and 17. *See* U.S.S.G. § 4A1.1(a) cmt. 1 ("A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period.").

[13]     As explained above, that was not Probation's position. Probation asserted

what I'm arguing is that the day he walked out, when he was on no probation, no anything.

THE COURT:  What day was that?

MR. STANKOSKI:  It was 7/22 of '91.

MR. STANKOSKI:  I had order[ed] a certified copy of the Texas convictions.  I have not entered them.  I didn't attach them.

THE COURT:  Let me get this straight.  He was sentenced on 7/22 of '91?

MR. STANKOSKI:  Yes, ma'am.

THE COURT:  Sentenced to 5-years custody, with the sentence to 5 years custody and credit for 138 days.

MR. STANKOSKI:  Yes, ma'am.

THE COURT:  What happened after that?  Did he serve 5 years?

MR. STANKOSKI:  No, ma'am.

THE COURT:  What happened?

MR. STANKOSKI:  He walked out of jail.

A. October 17th, 1991, is when I got out.

THE COURT:  I'm sorry.

MR. STANKOSKI:  October 17th, 1991.

---

that relevant conduct in 2004, or even 2005 through mid-2006, was within the applicable 15-year period, such that this felon-in-possession conviction reached back to the day the Texas sentence was **imposed**—July 22, 1991—regardless of how much time Jewett was incarcerated.  During the evidentiary hearing, moreover, Mr. Stankoski admitted that he was not as well versed in this particular nuance of the Guidelines.  But, as the Government has conceded, the interplay between relevant conduct and criminal history under the Guidelines is "not intuitive."  *Cf. United States v. Carr*, Criminal Action File No. 1:06–cr–275–TCB, 2013 WL 4855341, at *6 (N.D. Ga. Sept. 11, 2013) (finding that the "'relatively sophisticated' and 'counter-intuitive' Guideline argument [ ] overlooked[, not only by counsel, but] by several extremely competent folks, starting with the probation officer (whose primary job is to calculate Guideline sentences) and ending with the district court . . . bolster[ed] the conclusion that there was no actionable Sixth Amendment violation").

THE COURT:  Is that in the record?  Lets look in the record.

MR. STANKOSKI:  Judge, I had a difficult time interpreting.

THE COURT:  October of '91 is when he completed his in custody sentence.  And then it's your position that he didn't serve any probation or anything.  It was just that was it?

MR. STANKOSKI:  Yes, ma'am.

THE COURT:  Do those reports support that position?

MR. STANKOSKI:  They don't support it, but don't show he was on probation.  Doesn't say, you are hereby released.  But it also doesn't say here is your probation and you are on probation.  It's silent.

THE COURT:  Once you challenge it, it's not your. . . . we have to get the facts from the government.  What do you have?

[AUSA] O'BRIEN:  Well, Your Honor I'm relying on the what the probation officer's response was.  That it did not comport with the judgment in this case and with the applicable time period that is contained in the guidelines, it's that any prior sentence of imprisonment exceeding one year and one month, that was imposed within the fifteen years of the defendant's commencement of the instant offense is counted.

THE COURT:  All right. Let me get it straight.  So what we need to do is find out when the end of his sentence was there, including any probationary time.  And anything that occurs in the next 15 years, it would be counted.  But if it was beyond 15 years -- if it was October of '91, let's assume that to be true for the moment.  July of '08 would be 17 -- well, not quite 17 years, 16 and a half.  So what would be your argument?  Let's make an assumption that October '91 is the correct date.

MS. O'BRIEN:  Well, for the reasons stated in the probation officer's response that the relevant conduct applies if the defendant was in possession of firearms as a prohibited person for that 2004 date.

THE COURT:  Uh-huh.

MS. O'BRIEN:  That was mentioned in paragraph 15, that there was no objection to, the factual basis of that.

THE COURT:  That he was in possession of firearms back in

Christmas of 2004.

 MS. O'BRIEN: Which --

 THE COURT: Do you have evidence to support that?

 MS. O'BRIEN: There has been no objection to that. I can offer the agents testimony to that but there was no objection to that, to that factual allegation.

 THE COURT: Uh-huh.

 MS. O'BRIEN: The objection to the calculation of the guidelines, with the applicable time period, the facts that establishes it wasn't in dispute from the presentence report.

(Doc. 81 at 5:2-9:8.)

As the Court recognized at sentencing (*see id.* at 7:11-13), "[w]hen a defendant challenges one of the factual bases of his sentence as set forth in the PSR, the Government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Lawrence*, 47 F.3d 1559, 1566-69 (11th Cir. 1995) (citations omitted); *see also United States v. Hernandez*, 145 F.3d 1433, 1440 (11th Cir. 1998) ("The burden of proof for establishing that a sentence enhancement is warranted lies with the prosecution and it is the duty of the district court to insure that the prosecution carries its burden of proof." (citing *Lawrence*, 47 F.3d at 1566-69)); *United States v. Ndiaye*, 434 F.3d 1270, 1300 (11th Cir. 2006) ("The Government has the burden of proving the applicability of guidelines that enhance a defendant's offense level." (citing *United States v. Cataldo*, 171 F.3d 1316, 1321 (11th Cir. 1999))); *United States v. Horta*, 451 Fed. App'x 820, 821-22 (11th Cir. Dec. 8, 2011) (per curiam) ("[T]he government's burden of proof . . . must be satisfied with 'reliable and specific evidence.'" (quoting *United States v.*

*Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997) and citing *Lawrence*, 47 F.3d at 1566)). Similarly, once a defendant questions the inclusion in the PSR of a previous conviction, the burden is on the Government to establish by a preponderance of the evidence that the previous conviction can be properly considered to enhance a defendant's sentence. *See United States v. Lewis*, 237 Fed. App'x 607, 610-11 (11th Cir. June 27, 2007) (per curiam) (citing *Ndiaye*, 434 F.3d at 1300). It is also "the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes." *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) (citing *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005)); *accord United States v. Bennett*, 472 F.3d 825, 833-34 (11th Cir. 2006).

Thus, as the transcript from the sentencing hearing shows, although Jewett had objected to the inclusion of the Texas conviction as an enhancement, it was the Government's position that relevant conduct in, as early as, Christmas 2004 warranted that enhancement. It was also the Government's position that unobjected-to factual paragraphs in the PSR detailing Jewett's possession of firearms in, as early as, Christmas 2004 were sufficient to carry its burden to establish by a preponderance of the evidence that the Texas conviction should be properly considered as an enhancement.

However, while some allegations of fact in a PSR to which no objections are made are, standing alone, sufficient to establish an enhancement, *see, e.g., United States v. Holland*, 148 Fed. App'x 890, 892-93 (11th Cir. Sept. 16, 2005) (per curiam) ("The fact that there was an outstanding warrant for a probation violation was

included in Holland's PSI, and Holland failed to make any factual objections to the PSI. Thus, Holland admitted that there was an outstanding probation violation, which was sufficient to trigger the two-point increase in U.S.S.G. § 4A1.1(d).");, others—such as facts included to show when conduct relevant to an instant offense commenced, included to capture an earlier conviction otherwise beyond the applicable 15-year period[14]—are not. The sentencing court must analyze such facts before their relevance to sentencing can be determined. Stated another way, just because Jewett did not contest that he possessed firearms on Christmas 2004 and in 2005 and 2006 (Doc. 61, ¶¶ 14-17) does not mean that such conduct is

---

[14]    A firearms offense commences when a defendant first engages

in any "act or omission" occurring "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3 (enumerating the factors considered in determining "relevant conduct"), cited in § 4A1.2 cmt. n.8 (noting "commencement of the instant offense" includes any relevant conduct under § 1B1.3); *see also United States v. Rosenkrans*, 236 F.3d 976, 977-78 (8th Cir. 2001) (applying the "relevant conduct" definition in the Guidelines to determine the "commencement" date of the "instant offense").

*United States v. Cunningham*, 214 Fed. App'x 627, 629 (8th Cir. Jan. 29, 2007) (per curiam) (concluding that "the district court did not commit clear error in finding a preponderance of the evidence established Cunningham engaged in conduct relevant to the firearm possession offense at least as early as 2000 when Cunningham coerced his wife into purchasing three of the firearms"); *see also United States v. Frappier*, 377 F. Supp. 2d 220, 223 (D. Me. 2005) ("Applying § 1B1.3's definition of relevant conduct to § 4A1.1's concept of commencement, this Court concludes the date for commencement of the offense involving the .22 took place in 2003, when Mr. Frappier came into possession of the rifle, and the date for commencement of the offense involving the .410 shotgun took place on December 22, 1996, when he made the illegal purchase. This conclusion is buttressed by the uncontroverted evidence that once in possession, Mr. Frappier continuously retained possession of both firearms until the date of discovery." (relying on two 2005 Sixth Circuit cases—*United States v. Oliver*, 129 Fed. App'x 210 (6th Cir. 2005) and *United States v. Susewitt*, 125 Fed. App'x 681 (6th Cir. 2005)—which both affirmed the use of earlier conduct relevant to the instant offense "to capture earlier convictions that would otherwise have been beyond the allowable time")).

***automatically*** deemed to be relevant, which would then mean that the offense commenced on, for example, Christmas 2004 (as opposed to on July 22, 2008), and therefore, Jewett's Texas conviction, imposed on July 22, 1991, which absent relevant conduct is outside the applicable 15-year period, can be captured to enhance this sentence regardless of how long Jewett was incarcerated after imposition of the sentence in Texas. ***Instead***,

> [i]n order to determine whether offenses are part of the same course of conduct, and thus relevant conduct, the Guidelines' commentary provides a three-prong test. The sentencing court must look to: (1) the temporal proximity between the two offenses; (2) the similarity of the offenses; and (3) the regularity of the offenses. Importantly, the test is a sliding scale, so even if one factor is absent, relevant conduct may be found where at least one other factor is strong. Therefore, although there is no bright-line rule defining what constitutes the same course of conduct, the relative strengths of the three prongs must be individually assessed. ***This factual determination is for the District Court to determine in the first instance [and, if challenged, is] review[ed] for clear error***.

*United States v. Kulick*, 629 F.3d 165, 171 (3d Cir. 2010) (internal citations and quotation marks omitted and emphasis added).[15] And in response to Ms. O'Brien's statement that there was no objection to the facts that establish Jewett was in possession of a firearm "in Christmas of 2004" (*see* Doc. 81 at 8:10-9:8), the Court, indeed, observed, "Then the question becomes is [that] relevant conduct . . ." (*id.* at 9:9-10). The United States, in its motion to reconsider (Doc. 87) the undersigned's order setting the habeas petitions for an evidentiary hearing, and at that

---

[15] At the evidentiary hearing, counsel for the United States stressed that Jewett failed to object to ¶¶ 14-17 of the PSR (factual statements regarding his possession of firearms in 2004, 2005, and 2006). However, again, because those facts do not prove relevant conduct without further consideration by the Court, Jewett's failure to attack them does not necessarily forfeit his ability to challenge the applicability of the Texas conviction.

evidentiary hearing, argued that the conduct is clearly relevant and, more importantly, the Court, at sentencing, did not find, necessarily, that it was not relevant.

For purposes of the motion to reconsider, the United States accepted Jewett's interpretation of the Texas records he proffered on reply[16]—the same records were also relied upon at the evidentiary hearing—but argues that ¶ 15 of the PSR establishes that the offense Jewett was convicted of in this Court commenced in December 2004, well before "the 15 year clock . . . expired on January 14, 2007." Specifically, the Government contends,

> [I]n light of Jewett's relevant conduct, he commenced his instant offense in December 2004, well within § 4A1.2(e)(1)'s 15-year window regardless of whether he was released from Texas prison in July 1991 that he asserted at sentencing (13 years and 6 months) or January 1992 that he asserts now (12 years and 11 months). And there was no objection to the finding of relevant conduct at Jewett's sentencing proceeding; nor is there any such objection now, on habeas.

> Moreover, although the question is academic, it is difficult to see how any such (hypothetical) objection would have been sustained. Jewett's is a straightforward felon-in-possession-of-a firearm case under 18 U.S.C. § 922(g)(1), where he admitted to this Court that, despite his conviction of four felony offenses, he possessed a Colt .45 caliber pistol

---

[16]      Exhibit A to Jewett's reply (Doc. 83 at 13) is purported to be information regarding his Texas conviction, which is, according to Jewett, the very information counsel could not provide to the Court prior to sentencing. Construing that information in the light most favorable to Jewett, that is, adopting his position on reply entirely,

> [t]he records from the Texas Department of Criminal Justice show that [Jewett's] sentence began on March 7, 1991 (credit for 138 days from the date of imposition of sentence on July 22, 1991) and that he was released from **incarceration** on January 14, 1992[; thus, Jewett's] **"incarceration"** ended January 14, 1992, and the 15 year clock began to run on that date and expired on January 14, 2007.

(Doc. 83 at 4 (emphasis in original).)

in 2008. *See* Doc. 58 (09-00076-KD-N) at 13-15 (factual resume). To say the least, it is highly relevant that he possessed the same kind of firearm as early as 2004, smacking of an offense that continued seamlessly for several years prior to 2008. *See* PSR at ¶ 15 (Jewett observed in 2004 receiving a .45 caliber pistol as a gift from witness Saddler; Jewett possessed as many as 30 to 40 firearms during that period). *See* U.S.S.G. § 1B1.3(a)(1)(A) (relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."). To determine the scope of a relevant conduct in a given case, the sentencing court looks to "whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind." *United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994) (citation omitted). The relevant conduct provisions are to be broadly interpreted. *See, e.g., United States v. Behr*, 93 F.3d 764, 765 (11th Cir. 1996).

In any event, during the sentencing hearing this Court did not determine that Jewett was not subject to the relevant conduct described in paragraph 15 of his PSR. Rather, when seeking to clarify when Jewett was released from prison on the Texas offenses, it expressed misgivings as to whether, as a matter of law, it was appropriate to consider relevant conduct when calculating criminal history. *See* Doc. 81 at 11 (in response to AUSA pointing out that "the relevant conduct applies if the defendant was in possession of firearms as a prohibited person for that 2004 date," *id.* at 8). The answer to that question is not intuitive. But as explained above, there is a clear answer. As a matter of law, the calculation of the date of the "commencement of the instant offense" under § 4A1.2(e)(1) necessarily captures relevant conduct. *See* U.S.S.G. § 4A1.2, cmt. 8. The application notes to the guidelines "are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." *United States v. Wilks*, 464 F.3d 1240, 1245 (11th Cir. 2006) (internal quotations and citation omitted). "Application Note Eight 'reflects the fundamental principle of the Sentencing Guidelines that relevant conduct should be treated as an integral part of the offense of conviction.'" *United States v. Brogdon*, 503 F.3d 555, 560 (6th Cir. 2007) (quoting *United States v. Dixon*, 318 F.3d 585, 590 (4th Cir. 2003)).

(Doc. 87 at 4-6.)

However, contrary to the United States' characterization of the sentencing hearing, it appears that the Court rejected the position that **because of relevant conduct** the instant offense commenced on Christmas 2004, as opposed to July 22, 2008, and therefore, Jewett's Texas conviction, imposed on July 22, 1991—which, absent the relevant conduct, is outside the applicable 15-year period—can be captured to enhance this sentence.[17]  Instead, only knowing the date the 5-year Texas sentence was imposed and that Jewett received credit for 138 days time served (*see* Doc. 81 at 10:21-11:23)—and not knowing when Jewett's incarceration in Texas ended—the Court determined that the Texas sentence was within the 15-year period based on the date Jewett committed the instant offense, July 22, 2008.  (*See id.* at 11:24-12:16 ("Well let me be clear here.  **As to your objection that the relevant conduct should be counted as instant offense, or the government's position, I disagree with that**. . . . But as far as release -- the problem though is your objection is ultimately overruled.  I want to make this clear so that if you find otherwise and need to show me that or know otherwise I should say, you need to tell me that now.  **The sentence, even though it's 5 years, and we don't know when he was released, but it's a 5-year sentence.**  And so the time would be from '91 to -- 5 years from that, which would be '95 minus the 138 days.  So its [sic] '95.  And so '95 to 2008 is 13 years.  So the calculation would be included." (emphasis added)).)

---

[17]     During the evidentiary hearing, counsel for the United States characterized the Court's relevant-conduct determination as understandable, but erroneous, and further provided that, had that determination mattered—that is, had the Court not ultimately overruled Mr. Stankoski's objection—the United States would have appealed.

## B.  "Reconsideration" of the Court's Relevant Conduct Finding at Sentencing

In an attempt to show that Jewett cannot prove *Strickland*'s prejudice prong, which requires that he show that it is "substantial[ly], not just conceivabl[y,]" likely the sentence he received would have been different absent counsel's errors, if any, *Evans*, 699 F.3d at 1270 (quoting *Harrington*, 131 S. Ct. at 792), the United States has, in effect, requested that the Court reconsider—on habeas review—the ruling as to relevant conduct made at sentencing.  And while the United States repeatedly— and emphatically—asserted at the evidentiary hearing that the Court's determination as to relevant conduct at sentencing was wrong as a matter of law, the United States has failed to provide the undersigned authority to show that it is proper to address the Court's previous determination at this stage of the case.[18] Undeniably, if Jewett was requesting the same—that is, had he asserted a habeas claim that the Court misapplied a sentencing guideline provision as to him—such a claim would likely be barred at this stage.  *See, e.g., Quinn v. United States*, Criminal No. 1:09–CR–0080–TCB–JSA–2; Civil Action No. 1:12–CV–719–TCB– JSA, 2012 WL 4514133, at *5 n.4 (N.D. Ga. Sept. 12, 2012) ("The Court notes . . . that sentencing guideline calculations are generally not of constitutional significance as required to be cognizable under § 2255.  *See Gilbert v. United States*, 640 F.3d 1293, 1321 (11th Cir. 2011) (holding claim that a sentencing guidelines provision was misapplied to the petitioner was not a constitutional claim); *Ayuso v.*

---

[18]     Mr. Knizley, Jewett's habeas counsel, in fact, argued that the Court is prevented from readdressing the relevant conduct determination now, asserting it was a judicial determination.

*United States*, 361 Fed. App'x 988, 991–92 (11th Cir. Jan. 22, 2010) (per curiam) (holding sentencing claim not cognizable under § 2255 because, *inter alia*, it is not constitutional error)." (internal citations modified)), *report and recommendation adopted*, 2012 WL 4511332 (N.D. Ga. Oct. 2, 2012); *United States v. Crum*, Criminal No. 11–00140–CG–C, 2012 WL 5966635, at *1-2 (S.D. Ala. Nov. 28, 2012) ("Petitioner's challenge to this Court's imposition of a two-level enhancement under § 2D1.1(b)(1) is a non-constitutional issue that provides no basis for collateral relief in this case.")). Accordingly, the undersigned will **DECLINE** the United States' invitation to reconsider the Court's relevant conduct ruling at sentencing.

## C. *Strickland*'s Prejudice Prong

Given the Court's determination as to relevant conduct, it is the opinion of the undersigned that there is a "reasonable probability," not mere possibility, that but for Mr. Stankoski's failure to offer evidence at sentencing to establish the date upon which Jewett's incarceration in Texas ended, the outcome—that is, Jewett's sentence—would have been different. *See Strickland*, 466 U.S. at 694; *see also Cooper*, 646 F.3d at 1353-54 (11th Cir. 2011) ("*Strickland* asks if a different result is 'reasonably probable,' not whether a different result is 'possible.'" (quoting *Ferguson v. Secretary for Dep't of Corr.*, 580 F.3d 1183, 1198-99 (11th Cir. 2009))); *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (a claimant "must show 'not merely that the errors . . . created a ***possibility*** of prejudice, but that they worked to his ***actual*** and substantial disadvantage'" (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis provided in *Frady*)).

As to the prejudice determination, again, the sentencing transcript is helpful:

MR. STANKOSKI: Judge.

THE COURT: Do you have something you want to add?

MR. STANKOSKI: I don't want to add. I want to go back to the no probation, if that becomes an issue I found what I think would be definitive.

THE COURT: What did you find.

MR. STANKOSKI: May I approach.

THE COURT: Sure. Are you offering this?

MR. STANKOSKI: Yes, ma'am.

THE COURT: We will mark this whole thing as Defendant's Exhibit number 1.

(Off the record discussion)

THE COURT: Okay. The document he is pointing out is page -- I don't know what page it is, it says page 550 of volume 20 on the bottom. Judgment on plea of guilty before court. Waiver of jury trial. No probation. And on this day set forth -- well, this document indicated obviously it's hard to tell but he said in jail. But this document would indicate the 5 years confinement commenced on July 22nd 1991, given credit for 138 days.

MR. STANKOSKI: Yes, ma'am.

THE COURT: Is it your position that he didn't serve any more time? I understand that is your position, no probation. ***But anything to show when he was released or still[] owing 5 years to Texas or what is the deal?***

MR. STANKOSKI: ***No, ma'am.***

THE COURT: I want to give you a minute for both of you to examine the document.

(Pause)

THE COURT: Have you been able to look to discern.

MS. O'BRIEN: Not from the document. It appears that he received 138 days credit on the date that sentence was imposed. That's

not giving -- a 5 year sentence that was imposed, given credit for 138 days.  Not any indication that he walked out that day.

(Doc. 81 at 10:6-11:23 (emphasis added).[19])

It is clear that had counsel been able to provide the Court proof of when Jewett was released in Texas, there is a reasonable probability that the Court would have found the Texas sentence outside of the applicable 15-year period and

---

[19]     While the issue of no probation and the Texas conviction was addressed at sentencing, there is also some evidence in the record that could be interpreted to mean that Jewett was on parole from the time he was released from incarceration in Texas until March 7, 1996.  (*See* Doc. 25, motion to dismiss indictment, Ex. A ("This notice will serve as an official discharge as authorized by the Texas Department of Criminal Justice, ***Parole*** Division[,]" listing "Discharge Date: 03/07/1996" (emphasis added)).)  Although March 7, 1996 is clearly within the applicable 15-year period—regardless of relevant conduct—as many federal courts have made clear, "even if [applicable state] law draws no real distinction between" them, "the ***federal*** Guidelines clearly distinguish" parole and incarceration "for purposes of calculating criminal history categories under § 4A1.1(e)." *United States v. Stewart*, 49 F.3d 121, 123 (4th Cir. 1995) (emphasis in original).

> In particular, section 4A1.1(e) of the Guidelines encompasses, for purposes of criminal history calculation, only sentences "counted under" section 4A1.1(a) and section 4A1.1(b), and expressly excludes sentences "counted under" sections 4A1.1(c) and 4A1.1(d); sections 4A1.1(c) and (d) address, among other things, confinement sentences of less than sixty days, probation, ***parole***, supervised release, fines, and residency in a halfway house. *See* U.S.S.G. § 4A1.1 Commentary and Background. The Guidelines' clearly differentia[te] . . . sentences of imprisonment, which count for purposes of calculations under § 4A1.1(e), and sentences of parole, which do not count for the assessment of points under § 4A1.1(e)[.]

*Id.* (emphasis in original); *see also id.* at 123-24 (further explaining, "the Guidelines, for purposes of calculating a 'sentence of imprisonment' under sections 4A1.1(a) or (b), contemplate the addition only of the time a defendant is imprisoned ***upon*** revocation of parole . . ." (citing U.S.S.G. § 4A1.2(k)(1))); *compare id.*, *with United States v. Galaviz*, 645 F.3d 347, 358, 360-61 (6th Cir. 2011) (explaining that §§ 4A1.1 and 4A1.2, directly applicable to the criminal history-Guideline issue now before this Court, "contemplate that a revocation of parole may operate to bring a past conviction within the relevant [15-year] time period, not merely incarceration pending a determination whether parole was indeed violated or other temporary detention").

And while there may be evidence, not addressed by the parties, that, within the relevant time period, Jewett could have been on parole as a result of the Texas conviction, there is no evidence that Texas authorities even attempted to revoke that parole.

would not have added the three criminal history points associated with that conviction (*see* Docs. 61, 70, ¶ 50), which points moved Jewett *from* Criminal History Category II, which when combined with Offense Level 26 yielded a Guideline Range of 70-87 months, *to* Criminal History Category III, which when combined with Offense Level 26 yielded a Guideline Range of 78-97 months.[20] Because Jewett was sentenced at the low end of the advisory Guideline Range (actually two months below that range), there is "a reasonable probability that, absent counsel's errors," which would have resulted in the Court considering a lower advisory Guideline Range, "the sentencer would have sentenced [Jewett] differently." *United States v. Perez*, Nos. 4:04cr19-RH/WCS; 4:05cv106-RH/WCS, 2007 WL 2274423, at *3 (N.D. Fla. Aug. 7, 2007) (citations omitted).[21]

---

[20]     Jewett actually received a sentence of 76 months, two months below the Guideline Range the Court considered. That sentence was based on a sentence of 38 months for the felon-in-possession conviction (from a Guideline Range, based on Criminal History Category II, of 37-46 months, which would have been 33-41 months had it been based on Criminal History Category I) and 38 months for the failure-to-appear conviction. (*See* Doc. 81 at 23:12-25:2.)

[21]     True, the Supreme Court has held that

> a criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993) (internal quotation marks, citations, and footnote omitted). But, in *Glover v. United States*, 531 U.S. 198 (2001), the Court also held that *Lockhart* cannot be relied on

> to deny relief to persons attacking their sentence who might show deficient performance in counsel's failure to object to an error of law affecting the calculation of a sentence because the sentence increase does not meet some

### D. *Strickland*'s Performance Prong

A finding of prejudice is, of course, not enough to grant Jewett's petitions as to Ground 1. *Cf. Butcher*, 368 F.3d at 1293 ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been."). Jewett must also affirmatively prove *Strickland*'s performance prong. To do so, Jewett must establish that Mr. Stankoski's "error [was] so serious that [he] was not functioning as the 'counsel' guaranteed by the Sixth Amendment[,]" *United States v. Carr*, Criminal Action File No. 1:06–cr–275–TCB, 2013 WL 4855341, at *6 (N.D. Ga. Sept. 11, 2013) (citing *Strickland*, 466 U.S. at 687); that is, show that Mr. Stankoski acted outside the undeniably "***wide range*** of professionally competent assistance[,]" *Van Poyck*, 290 F.3d at 1322 (emphasis added). Accordingly, it is important to examine how, and the extent to which, Mr. Stankoski assisted Jewett

---

baseline standard of prejudice. Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that ***any amount of actual jail time has Sixth Amendment significance***.

*Id.* at 203 (citations omitted and emphasis added).

While some courts, including district courts in this Circuit, have pointed out that because "*Glover* was decided when the sentencing guidelines were mandatory[,] . . . [w]hether *Glover*'s holding applies in an advisory guidelines scenario is an open question[,]" *Wilcox v. United States*, No. 8:10–CV–1917–T–27EAJ; Crim Case No. 8:07–CR–163–T–27EAJ, 2011 WL 5975683, at *4 n.8 (M.D. Fla. Nov. 29, 2011), the Eleventh Circuit, in an unpublished opinion, recently relied on *Glover* to vacate a district's court denial of a § 2255 motion. *See Sanz De La Rosa v. United States*, 481 Fed. App'x 480, 482-83 (11th Cir. June 5, 2012) (per curiam) (noting that had the district court not credited certain testimony, it would have resulted in a guideline range reduction "sufficient [ ] to constitute prejudice" (citing *Glover*, 531 U.S. at 202-03)); *see also id.* at 483 n.4 ("While the reduced guideline range would not necessarily result in a lower sentence, we note that the district court sentenced Sanz ***at the lowest end of the guideline range***, which might indicate that the court would again choose the bottom end of any lower guideline range. Therefore, we cannot say that the record conclusively demonstrates the absence of prejudice at sentencing." (citing *United States v. Booker*, 543 U.S. 220, 245 (2005)) (emphasis added))).

with regard to sentencing.

First, Mr. Stankoski testified that he met with Jewett between five and eight times prior to sentencing. And, in addition to filing a sentencing memorandum (Doc. 72), Mr. Stankoski filed cogent objections (*see generally* Doc. 66) to the draft PSR (Doc. 61) and defended those objections, and Jewett's positions generally, at sentencing. Two of those objections (concerning factual allegations in ¶¶ 10 and 21 of the PSR), to which the United States chose not to put on evidence in support at sentencing, were sustained. (*See* Doc. 80 at 2:15-3:13.) While those objections did not necessarily affect how the Guideline range was calculated, Mr. Stankoski testified that Jewett asked that they be made and, moreover, that the inclusion of such facts in the PSR could affect Jewett's classification once incarcerated.

Now, turning to the specific performance deficiency alleged in Ground 1, it is clear from the record, including Mr. Stankoski's testimony, that he identified—very early in his representation of Jewett—the need to obtain documentation regarding Jewett's Texas sentence and related incarceration. (*Compare* Criminal No. 09-76, Doc. 51 (notice of appearance filed Mar. 11, 2010), *with* Doc. 93, Gov't Ex. 1 at § 2255 evidentiary hearing, at 1-6 (Mar. 30, 2010 letter faxed to District Clerk in Collin County, Texas, requesting "a certified copy of the COMPLETE file from the Police Report to the sentencing order" and related materials.) Mr. Stankoski testified that once he received and reviewed the records from Collin County (Doc. 93-1, Gov't Ex. 2 at § 2255 evidentiary hearing) in early April 2010, he realized that those records did not shed any light on the critical question of when Jewett's

incarceration in Texas ended. As such, on April 9, 2010, a letter from Mr. Stankoski's staff was sent to the Texas "Department of Corrections," requesting information "to find out how long our client (William Russell Jewett, Jr.) was incarcerated in the state of Texas, and providing Jewett's date of birth and identification number.[22] (Doc. 93-2, Gov't Ex. 2 at § 2255 evidentiary hearing.) Mr. Stankoski further testified that his office did not receive records in response to this request. To the contrary, he testified, they were told they had everything, and he further testified that he thought he did everything he could to obtain the needed documentation.

However, at the evidentiary hearing, on cross-examination, Mr. Stankoski admitted that the first time he learned about the entity properly known as the Texas Department of Criminal Justice was when he reviewed Exhibit A to Jewett's reply (Doc. 83 at 13 (which was also admitted as Jewett's Ex. 1 (Doc. 92) at the evidentiary hearing)). He also admitted he did not find this record in his attempts, in Spring 2010, to document when Jewett's Texas incarceration ended. On cross, he further testified that he did not know exactly when he followed-up with his staff regarding the lack of response to the April 2010 inquiry, but said he did not believe they waited to the eve of sentencing, on September 17, 2010. Relatedly, he testified that he did not remember if the request to postpone the sentencing hearing for

---

[22] Although Mr. Stankoski sent his letter to the Texas "Department of Corrections," the actual name of that entity in Texas is the Department of Criminal Justice (the "TDCJ"). (*See, e.g.,* Doc. 25, Ex. A.) This error does not appear to have mattered because Mr. Stankoski's records indicate that the fax was received (*see* Doc. 93-2 at 3-4) and the identification number given for Jewett matches his TDCJ identification number (*see* Doc. 25, Ex. A).

forty-five days (*see* Doc. 62) had anything to do with that lack of response.[23]

As stated above, for purposes of *Strickland*, "perfection is not required." *Waters*, 46 F.3d at 1518. The standard is, instead, "whether some reasonable lawyer . . . could have acted, in the circumstances, as [Mr. Stankoski] acted . . . ." *White*, 972 F.2d at 1220, which, in turn, means that "no competent counsel would have taken the action that [Mr. Stankoski] did take[,]" *Freixas*, 332 F.3d at 1320 (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). As framed by Jewett on collateral attack, and laid out above, the specific action at issue is Mr. Stankoski's failure to follow-up regarding his April 9, 2010 request for records to document when Jewett was released from incarceration. As evidenced, simply by his making a second request once he realized the Collin County records did not contain incarceration information, Mr. Stankoski knew these records were important. Yet, approximately five months passed between the April 9, 2010 request for incarceration information and the September 17, 2010 sentencing. And Mr. Stankoski has offered no real explanation for why there was not additional follow-up during that time. Although Mr. Stankoski testified that he thought he did all he could and that it was represented to him that he had all the records, it is inconceivable to believe that there would be no documentation of when an inmate

---

[23] In fact, the stated reason for that continuance was because Jewett had not been debriefed (presumably in connection with an attempt to cooperate with the Government to obtain substantial assistance credit) (*see id.*); moreover, Mr. Stankoski testified at the evidentiary hearing that Mr. Jewett was attempting to cooperate prior to sentencing.

was released from state incarceration.[24]

Even so, "not every lawyerly slip constitutes ineffective assistance of counsel for Sixth Amendment purposes." *Prou v. United States*, 199 F.3d 37, 48 (1st Cir. 1999) (citing *Strickland*, 466 U.S. at 693). "After all, the Constitution entitles a defendant to generally proficient representation, not perfect representation." *Id.* (citing *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1999)). Nevertheless, "courts have not hesitated in finding ineffective assistance of counsel based upon ***isolated—but important—errors***." *Id.* (collecting cases) (emphasis added). While the line between an "isolated—but important—error," committed in an otherwise commendable representation, and a finding that counsel "could have done more[,]" *Waters*, 46 F.3d at 1518, may not always be clear, it is the undersigned's determination that Mr. Stankoski's failure to follow-up regarding his April 9, 2010 request for records to document when Jewett was released from incarceration was an "isolated—but important—error" that amounts to constitutionally-defective performance under *Strickland*.

## V.     Conclusion

The Magistrate Judge **RECOMMENDS** that Grounds 2 and 3 of Jewett's identical § 2255 petitions (Criminal No. 09-76, Doc. 76; Criminal No. 10-19, Doc. 22) be **DENIED** and that the Court find that he is not entitled to a certificate of

---

[24] Further, that such documentation was difficult to obtain is belied by the fact that, in addition to Mr. Knizley, Jewett, a layperson, obtained the records. Moreover, Mr. Wing obtained similar TDCJ records (*see* Doc. 25, Ex. A) during his representation of Jewett. And there similar records were part of the Court record when Mr. Stankoski entered his appearance.

appealability and is therefore not entitled to appeal *in forma pauperis* as to those grounds. Further, for reasons explained above, *see generally* § IV, the undersigned also **RECOMMENDS** that Ground 1 of Jewett's identical § 2255 petitions be **GRANTED**.

## VI. Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 10th day of January, 2014.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**